## IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| SANDRA HARRIS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) NO. CIV-12-470-D |
| | ) |
| AMERICAN INTERNATIONAL GROUP, | ) |
| INC., d/b/a AMERICAN INTERNATIONAL | ) |
| COMPANIES, and GRANITE STATE | ) |
| INSURANCE COMPANY, | ) |
| | ) |
| Defendants. | ) |

## ORDER

Before the Court is the motion of Defendant American International Group, Inc., d/b/a American International Companies ("AIG") [Doc. No. 27] to dismiss this action against it for lack of personal jurisdiction. Plaintiff timely opposed the motion, and AIG filed a reply.

In this action, Plaintiff asserts claims based on an automobile insurance policy issued by Defendant Granite State Insurance Company ("Granite") and providing uninsured and underinsured motorist coverage. Plaintiff alleges she was injured in a motor vehicle collision caused by the negligence of an uninsured motorist, and submitted a claim to Granite. She contends that, by denying her claim, Granite breached the insurance contract. She also contends it acted in bad faith by improperly investigating and handling her claim.

Plaintiff also names AIG as a defendant, alleging that it is the holding company for Granite and, in that capacity, AIG "owns and controls" Granite and other insurance companies. Complaint at ¶ 6. Although Granite issued the subject insurance policy, Plaintiff alleges that it is merely an instrumentality and alter ego of AIG, and thus seeks to hold AIG liable for the alleged policy breach and bad faith conduct.

In its motion, AIG argues that this Court cannot exercise personal jurisdiction over it because it lacks the necessary minimum contacts with Oklahoma to satisfy due process. It presents evidence that AIG is a Delaware corporation having its principal place of business in New York City, that it is not licensed to do business in Oklahoma, and does not maintain an office or own property here. Affidavit of AIG Assistant Corporate Secretary, Patrick M. Burke ("Burke affidavit"), Ex.1 to motion. AIG is a publicly listed holding company, and the ultimate corporate parent to numerous subsidiaries, including insurance companies. *Id.* at ¶ 8. However, AIG does not sell, write, or issue insurance policies, administer or process insurance claims, or make decisions regarding coverage. Nor is it authorized to do so on its own account or on behalf of any insurer. *Id.* at ¶ 10. As a holding company, its officers and directors, books records, and financial accounts are separate from those of its subsidiaries, including Granite. *Id.* at ¶ 11.

In response to the motion, Plaintiff does not dispute these contentions. However, she argues that, because Granite has sufficient minimum contacts with Oklahoma to permit the exercise of jurisdiction over it,[1] those contacts should be imputed to AIG because it allegedly controls Granite. In support, Plaintiff submits extensive exhibits, including AIG Securities and Exchange Commission ("SEC") filings and other publicly filed documents, which Plaintiff contends establish that AIG's control over Granite is sufficient to permit this Court to exercise jurisdiction over AIG. Plaintiff also submits transcripts of depositions of AIG employees taken in other litigation, arguing their

---

[1] Granite does not challenge the Court's exercise of personal jurisdiction over it. Although it denies liability, it does not dispute that it does business in Oklahoma, that it issued the subject insurance policy to Plaintiff, and that it processed her claim for coverage.

testimony establishes AIG's control over its insurance subsidiaries.[2]

District courts have discretion to determine whether an evidentiary hearing is required to adjudicate a Rule 12(b)(2) motion challenging personal jurisdiction. *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1069 (10th Cir. 2008). The parties in this case have not requested a hearing, and their extensive briefs and evidence, as well as applicable legal authorities, establish that no additional evidence is required to decide the issue raised by AIG. Nor is there a request by either party for jurisdictional discovery, as both rely heavily on public documents and deposition testimony in other litigation raising the same jurisdictional challenge. Accordingly, the Court finds that jurisdictional discovery need not be conducted in this case,[3] and the Court will proceed to rule on the basis of the parties' briefs and the evidentiary materials submitted.

Standard of review:

It is well established that, to be subject to personal jurisdiction, a nonresident defendant must have sufficient contacts with the forum state to satisfy the requirements of due process. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291 (1980); *Peay v. BellSouth Medical Assistance Plan*, 205 F.3d 1206, 1209 (10th Cir. 2000). "To obtain personal jurisdiction over a nonresident defendant in a diversity action, a plaintiff must show both that jurisdiction is proper under the laws of the forum state and that the exercise of jurisdiction would not offend due process." *Intercon, Inc. v. Bell Atlantic Internet Solutions, Inc.*, 205 F.3d 1244, 1247 (10th Cir.2000).

---

[2]The depositions were taken in *Freeman v. Commerce and Industry Insurance Company, et al.,* No. CIV-11-1172-F, an insurance case in which AIG was also named a defendant because of its status as a holding company for the numerous insurance companies named as defendants. Although the record in that case reflects AIG moved to dismiss for lack of personal jurisdiction, the case was settled before the Court issued a ruling on that motion.

[3]As a general rule, either party should be allowed discovery on the factual issues raised by a motion to dismiss for lack of jurisdiction. *Sizova v. National Institute of Standards & Technology*, 282 F.3d 1320, 1326 (10th Cir. 2002). However, the Court has discretion to determine if discovery is merited. *Id.*

The plaintiff has the burden of establishing jurisdiction when the defendant contests a court's jurisdictional authority. *See, e.g., AST Sports Science, Inc. v. CLF Distribution Limited,* 514 F.3d 1054, 1057 (10th Cir. 2008). Where a court does not hold an evidentiary hearing, the plaintiff must only make a *prima facie* showing of personal jurisdiction by demonstrating, via affidavit or other written materials, facts that, if true, would support jurisdiction over the defendant. *Id.* In assessing the sufficiency of Plaintiff's showing in this case, the Court must assume the truth of her allegations if they are "plausible, non-conclusory, and non-speculative," and resolve properly disputed factual contentions in her favor. *Dudnikov v. Chalk & Vermillion Fine Arts, Inc.*, 514 F.3d 1063, 1070 (10th Cir. 2008).

"The analysis of the personal jurisdiction question in diversity cases generally involves a 2-step inquiry: courts must determine whether the exercise of jurisdiction is consistent with (1) the long-arm statute of the forum state, and (2) the due process clause of the fourteenth amendment." *McClelland v. Watling Ladder Co.*, 729 F. Supp. 1316, 1318 (W. D. Okla. 1990). In Oklahoma that test becomes a single inquiry because Oklahoma's long-arm statute reaches to the full extent of due process. *Rambo v. American Southern Ins. Co.*, 839 F. 2d 1415, 1416 (10th Cir. 1988).

To establish the requisite minimum contacts, plaintiff must show that defendant has "purposefully availed itself of the privilege of conducting business in the jurisdiction of this court;" for this purpose, a defendant need not be physically present or have physical contacts with the forum, so long as its efforts are purposefully directed there. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985); *Pro Axess, Inc. v. Orlux Distribution, Inc.*, 428 F.3d 1270, 1276-1277 (10th Cir. 2005).

The necessary minimum contacts may be established by general or specific jurisdiction.

*Benton v. Cameco Corp.*, 375 F.3d 1070, 1075 (10th Cir. 2004), *cert. denied*, 544 U.S. 974 (2005). General jurisdiction exists where a plaintiff's cause of action does not arise from or relate to the defendant's activities within the forum state, but the defendant has maintained "continuous and systematic general business contacts in the state." *OMI Holdings, Inc. v. Royal Ins. Co. of Canada,* 149 F.3d 1086, 1091 (10th Cir. 1998). "General jurisdiction requires that a defendant have contacts with the forum 'so continuous and systematic as to render [it] essentially at home in the forum State.'" *Fireman's Fund Ins. Co. v. Thyssen Mining Construction of Canada, Ltd.,* 703 F.3d 488, 493 (10th Cir. 2012) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown,* __ U.S. __, 131 S.Ct. 2846, 2851 (2011)). Specific jurisdiction exists where a defendant does not have continuous contacts with the forum state, but the plaintiff shows that 1) the defendant has purposefully directed its activities at residents of the forum state and 2) the plaintiff's alleged injuries "arise out of or relate to" those activities. *Burger King*, 471 U.S. at 473; *OMI*, 149 F.3d at 1091.

With respect to specific personal jurisdiction, the Court employs a "two-step inquiry" to determine whether the exercise of jurisdiction satisfies due process. *Benton,* 375 F.3d at 1075. First, the Court considers whether "the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." *World-Wide Volkswagen*, 444 U.S. at 297. Second, "if the defendant's actions create sufficient minimum contacts," the Court must then consider whether the exercise of personal jurisdiction over the defendant offends traditional notions of fair play and substantial justice." *OMI,* 149 F.3d at 1091(quotations omitted).

In this case, Plaintiff concedes that, other than through its status as Granite's holding company, AIG lacks sufficient contacts to confer either general or specific personal jurisdiction. She argues, however, that both general and specific personal jurisdiction may be exercised because

Granite, which has sufficient forum contacts, is a mere instrumentality and alter ego of AIG, thus permitting Granite's forum contacts to be imputed to AIG.

A court may not automatically exercise jurisdiction over a parent corporation merely because such jurisdiction may be exercised over the parent's subsidiary. *Pro Axess,* 428 F. 3d at 1278 n. 4 (citing *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 781 n. 13 (1984)). "With respect to parent-subsidiary relationships, '[a] holding or parent company has a separate corporate existence and is treated separately from the subsidiary in the absence of circumstances justifying disregard of the corporate entity.'" *Birmingham v. Experian Information Solutions, Inc.*, 633 F.3d 1006, 1018 (10th Cir. 2011) (quoting *Benton,* 375 F.3d at 1081). More specifically, "[f]or purposes of personal jurisdiction, 'a holding or parent company has a separate corporate existence and is treated separately from the subsidiary in the absence of circumstances justifying disregard of the corporate entity.'" *Good v. Fuji Fire & Marine Ins. Co., Ltd.*, 271 F. App'x 756, 759 (10th Cir. 2008) (unpublished opinion) (quoting *Quarles v. Fuqua Indus., Inc.*, 504 F.2d 1358, 1362 (10th Cir.1974) and citing *Benton*, 375 F.3d at1081).

"Companies conducting business through their subsidiaries can qualify as transacting business in a state, provided the parent exercises sufficient control over the subsidiary." *Pro Axess,* 428 F. 3d at 1278. "When one defendant completely controls another, the latter's contacts with the forum may fairly be imputed or attributed to the former." *Home-Stake Production Co. v. Talon Petroleum, C.A.*, 907 F.2d 1012, 1020 (10th Cir. 1990). Thus, "'a wholly owned subsidiary may be an agent and when its activities as an agent are of such a character as to amount to doing business of the parent, the parent is subjected to the in personam jurisdiction of the state in which the activities occurred.'" *Id.* (quoting *Curtis Publ'g Co. v. Cassel*, 302 F.2d 132, 137 (10th Cir.

1962)); *see also JTS Choice Enterprises, Inc. v. E.I. Dupont De Nemours and Co.*, 2013 WL 154421, at *7 (D. Colo. Jan. 15, 2013) (unpublished opinion) (quoting *Patin v. Thoroughbred Power Boats, Inc.*, 294 F.3d 640, 653 (5th Cir. 2002)).

The alter ego theory is generally applied to determine if one corporation may be held liable for the conduct of another. Where liability is the issue, that determination involves several factors, including:

> (1) whether the dominant corporation owns or subscribes to all the subservient corporation's stock, (2) whether the dominant and subservient corporations have common directors and officers, (3) whether the dominant corporation provides financing to the subservient corporation, (4) whether the subservient corporation is grossly undercapitalized, (5) whether the dominant corporation pays the salaries, expenses or losses of the subservient corporation, (6) whether most of the subservient corporation's business is with the dominant corporation or the subservient corporation's assets were conveyed from the dominant corporation, (7) whether the dominant corporation refers to the subservient corporation as a division or department, (8) whether the subservient corporation's officers or directors follow the dominant corporation's directions, and (9) whether the corporations observe the legal formalities for keeping the entities separate.

*Gilbert v. Security Finance Corp. of Oklahoma, Inc.*[4], 152 P.3d 165, 175 (Okla. 2006) (citations omitted). Although these factors are examined in determining whether personal jurisdiction may be exercised, the primary consideration is the level of control exercised by the parent over the subsidiary. "In order to establish jurisdiction under the alter-ego theory, there must be proof of pervasive control by the parent over the subsidiary more than what is ordinarily exercised by a parent corporation." *Gilbert v. Security Finance Corp. of Oklahoma, Inc.*, 152 P.3d 165, 174 (Okla.

---

[4] AIG notes that whether the corporate veil may be pierced for liability purposes should be governed by Delaware law because that is the state in which it is incorporated. However, personal jurisdiction challenges in diversity cases are analyzed according to the forum state's long-arm statute. *McClelland v. Watling Ladder Co.*, 729 F. Supp. 1316, 1318 (W. D. Okla. 1990). As AIG also notes, Plaintiff's response to the motion focuses on an alter-ego theory of liability rather than that applicable to an alter-ego basis for the exercise of personal jurisdiction. Because this issue arises here in the context of a personal jurisdiction challenge, the Court finds the *Gilbert* analysis applicable. In any event, the Court does not find that any differences in Delaware and Oklahoma law impact the analysis in this context.

2006) (citing *Epps v. Stewart Information Services Corp.*, 327 F.3d 642, 649 (8th Cir. 2003) (a plaintiff must show that "the parent so controlled and dominated the affairs of the subsidiary that the latter's corporate existence was disregarded so as to cause the residential corporation to act as the nonresidential corporate defendant's alter ego").

In *Gilbert*, the Court considered whether holding companies could be subject to personal jurisdiction in Oklahoma based on their subsidiaries' admitted contacts here. The Court considered evidence that the holding companies owned the Oklahoma subsidiaries' stock and had some directors in common with the Oklahoma subsidiaries; there was also evidence that the holding companies and subsidiaries filed consolidated income tax returns, and the holding companies executed a management agreement. *Id.* These facts were, however, insufficient to constitute the pervasive control required to permit the exercise of personal jurisdiction over the holding companies under an alter-ego theory. *Gilbert*, 152 P. 3d at 174.

Thus, the question in this case is whether, despite its lack of contacts with Oklahoma, AIG exercises pervasive control over Granite, thus rendering AIG subject to jurisdiction here.

The evidence before the Court shows that AIG is not the direct owner of Granite. In fact, Granite is one of several subsidiaries owned by other companies which are owned by a company or companies for which AIG is the holding company. AIG's evidence shows that Granite is a wholly owned subsidiary of New Hampshire Insurance Company which, in turn, is a wholly owned subsidiary of Chartis, Inc., and Chartis, Inc. is wholly owned by AIUH LLC, a company which is wholly owned by AIG.[5] Burke Affidavit at ¶ 9. Despite this attenuated relationship between Granite and AIG, Plaintiff contends AIG exercised control over Granite in its business decisions as

---

[5] Of these companies, only AIG is named as a defendant in this case.

an insurer in Oklahoma.

As AIG points out, at least two federal courts considering the propriety of exercising personal jurisdiction over AIG have rejected the arguments asserted by Plaintiff, concluding AIG's status as a holding company for an insurance company did not support the level of control required to render it subject to the forum's jurisdiction. *Associated Electric and Gas Insurance Service Limited v. American International Group, Inc.,* 2012 WL 256146 (D. Utah Jan. 27, 2012) (unpublished opinion); *Bartlett Grain Company, L.P. v. American International Group,* 2011 WL 3794036 (W.D. Mo. Aug. 24, 2011) (unpublished opinion).

In *Associated Electric,* the plaintiff named AIG as a defendant and asserted the same argument pressed by Plaintiff in this case, contending the Utah court could exercise personal jurisdiction over AIG because, as the holding company for the insurance company issuing the policy on which the plaintiff's claims were based, it controlled the insurer's decisions. The plaintiff in *Associated Electric* argued that, despite AIG's lack of direct contacts with Utah,[6] its subsidiary insurance company was AIG's alter ego, and the insurer and AIG had a "unity of interest" sufficient to establish the "substantial and continuous activity" required to permit the exercise of personal jurisdiction over AIG. *Associated Electric*, 2012 WL 256146, at * 2.

In considering these arguments, the court examined the hierarchy of ownership of the several subsidiaries for which AIG was the holding company. The description of that hierarchy is similar to that in the instant case: the Utah insurer was a wholly owned subsidiary of Chartis U.S., Inc., which was wholly owned by Chartis, Inc.; and Chartis, Inc. was wholly owned by AIUH LLC, the

---

[6]As in this case, the evidence showed that AIG did not share officers or directors with its Utah subsidiary, did not maintain an office in Utah, and owned no property there. Nor was it licensed to do business in Utah. AIG did not issue policies for the insurers it owned as a holding company, and did not review claims or make decisions regarding coverage. *Associated Electric*, 2012 WL 256146, at *1.

wholly owned subsidiary of AIG. *Id.* The court found the attenuated relationship between AIG and the Utah insurer insufficient to establish the level of control required to exercise personal jurisdiction over AIG. In doing so, it noted the absence of any direct contacts between AIG and Utah, as the evidence showed AIG did not provide, and was not licensed to provide, "insurance services in Utah or conduct any business whatsoever in Utah." *Id.,* at *3.

In *Bartlett*, the plaintiff also named AIG as a defendant and alleged the existence of personal jurisdiction on the basis of AIG's status as the holding company for the forum state insurance company issuing the policy on which the plaintiff's claims were based. The *Bartlett* court examined the relationship between AIG and the forum state insurer, Chartis Insurance UK. That relationship was also based on a chain of ownership similar to the relationship between AIG and Granite in this case.[7] As is the case in this lawsuit, AIG did not have an office in Missouri or own property there, nor was it licensed to do business in Missouri, and it did not issue the policy, review the plaintiff's claim, or make the decision regarding that claim. However, the plaintiff asserted the same argument made by Plaintiff in this case, contending that AIG's financial documents established that AIG controlled Chartis Insurance UK and all other insurance companies for which it served as the holding company.

The *Bartlett* court concluded that such evidence was insufficient to show the degree of control required to disregard the separate corporate entities and impute the insurer's contacts with

---

[7] AIG was the holding company for AUIH, which held a different subsidiary, Chartis, Inc, which held another subsidiary, Chartis US, Inc., which was the majority owner of Chartis UK Holdings, Ltd., which held yet another subsidiary, and one of the latter's subsidiaries owned the co-defendant, Chartis Insurance UK. *Associated Electric*, 2012 WL 256146, at *1. In this case, it is not disputed that AIG is the holding company for AUIH, which is the holding company for Chartis, Inc., which owns Chartis U.S., Inc., which owns another subsidiary, Chartis U.S., Inc., the holding company for New Hampshire Insurance Company which, in turn, owns all of the stock of Granite. Burke Affidavit at ¶ 9.

Missouri to AIG. *Bartlett*, 2011 WL 3794036, at *3. In fact, the court concluded that "[p]laintiff's obligation is higher (or more important) in this case given the many layers of corporations and other entities between AIG and [the insurer]." *Id.*  Although the court applied Missouri law to determine if the insurer was merely AIG's alter ego, the analysis is essentially the same as that applied in Oklahoma. *See Gilbert, supra.*

In this case, Plaintiff submits evidence, apparently not presented in *Associated Electric* or *Bartlett,* that AIG's SEC filings and other public documents show a financial structure that Plaintiff contends establishes the pervasive control required for this Court's exercise of personal jurisdiction over AIG.  She also submits deposition testimony in which AIG employees were asked questions regarding the benefits derived by AIG from the business of its subsidiary insurance companies.  While this evidence shows that AIG benefits from the business of its subsidiary insurance companies, the Court does not find that it establishes the level of pervasive control required to permit the exercise of personal jurisdiction.

Similar evidence was rejected by the Eighth Circuit in *Epps v. Stewart Information Services Corp.*, 327 F.3d 642 (8th Cir. 2003).  The parent corporation in *Epps* maintained no contacts with the forum state, Arkansas, sufficient to confer personal jurisdiction.  The plaintiff argued that the parent was nevertheless subject to personal jurisdiction because it effectively controlled the subsidiary.  In support of that contention, the plaintiff submitted the parent corporation's SEC filings, which reflected that the debts and assets of the subsidiary were considered those of the parent, that the subsidiary was doing business in Arkansas, and the parent and subsidiary shared some common officers. *Epps*, 327 F.3d at 646 n. 4.  Plaintiff argued that both the public filings and the parent's internal documents established that the parent did not draw any distinction between itself and its

subsidiaries but publicly represented itself as a title insurance company providing services in all 50 states. *Id.* at 646.

The Eighth Circuit affirmed the trial court's dismissal of the parent for lack of personal jurisdiction. The Circuit found the foregoing evidence insufficient to establish the level of control required to disregard the fact that the parent and subsidiary were separate corporate entities and treat the subsidiary as the mere alter ego of the parent. *Epps*, 327 F.3d at 650.

The Court agrees with that conclusion. Although the SEC filings and other documents submitted as evidence by Plaintiff in this case reflect the financial relationship between AIG and its subsidiaries, including Granite and other insurance companies, the Court finds that such evidence does not demonstrate the pervasive level of control required by *Gilbert* to permit the exercise of personal jurisdiction over AIG in Oklahoma. As *Gilbert* noted, "[a] holding company, as the name indicates, is organized for the purpose of owning and holding the stock of other corporations." *Gilbert,* 152 P. 3d at 171 n. 6  (citations omitted). Thus, it is not unusual to find that the holding company's financial disclosures and publicly filed documents reflect financial information regarding its subsidiaries and their business activities. The Court does not find this information sufficient to show that AIG exercises control over the day-to-day business of Granite, including the issuance of insurance policies, insurance coverage, review of claims, decisions regarding whether a claim will be paid, or the other ongoing activities of an insurance subsidiary doing business in Oklahoma.

Nor does the Court find the deposition testimony of AIG employees, taken in other litigation in which Granite was not a party, sufficient to show the pervasive control required to permit the exercise of jurisdiction over AIG in Oklahoma. Some of the deponents acknowledged the role of AIG in certain financial aspects of the subsidiary insurer's business activities. However, as AIG

points out in reply, the financial arrangements, including but not limited to the reinsurance pooling agreement, do not show that AIG made decisions regarding the issuance of insurance policies by Granite, the evaluation of claims, or the extent of insurance coverage. Moreover, as AIG also argues at length, Oklahoma law contains extensive regulations governing the financial transactions of a domestic insurance company that belongs to an insurance holding company system. Okla. Stat. tit. 36, § 1651, *et seq.* The Court finds that the evidence regarding the financial structure of AIG, as holding company, and Granite, as an Oklahoma insurer, does not support the exercise of jurisdiction over AIG.

Conclusion:

For the foregoing reasons, the Court finds that AIG lacks sufficient contacts with Oklahoma, either directly or through the forum activities of Granite, to permit this Court to exercise jurisdiction over AIG in this case. Accordingly, the motion to dismiss [Doc. No. 16] is GRANTED.

IT IS SO ORDERED this 11th day of February, 2013.

_____
TIMOTHY D. DeGIUSTI
UNITED STATES DISTRICT JUDGE